UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT EARL HACKNEY,

          Plaintiff,

v.

UNKNOWN KELLER et al.,

          Defendants.
_____/

Case No. 1:25-cv-1175

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred there. Plaintiff sues the following ICF personnel: Inspector/Assistant Deputy Warden Unknown Cassel, Inspector Unknown Salinas, Librarians Joe Novak and Philip Zupont, Hearing Investigator Unknown Demps, Captains Unknown Henry and Unknown Kelly, Sergeants Unknown Leonhardt and Unknown Cook, and Correctional Officers Unknown Keller, Unknown Mahalic, and Unknown Dalton.

Plaintiff alleges that on April 23, 2024, he received a Class I misconduct ticket for possession of dangerous contraband. (Compl., ECF No. 1, PageID.3.) The ticket was based on Defendant Keller bringing four pieces of wire mesh and a paper clip to Defendant Leonhardt and stating that "these items can be used to make a[n] improved tattoo machine." (*Id.*)

Plaintiff was placed in segregation following receipt of the misconduct ticket. (*Id.*) Plaintiff advised Defendant Demps that staff failed to use a hand-held metal detector to determine whether the wire mesh was actually made of metal and that they failed to provide any proof that the wire mesh and paper clip were being used for tattooing. (*Id.*) Ultimately, non-party Hearing Officer Morris determined that Defendants Keller and Leonhardt had failed to answer the questions addressed to them and had failed to provide a witness statement and, therefore, dismissed the misconduct ticket. (*Id.*, PageID.3–4.) Plaintiff was released from segregation on May 3, 2024. (*Id.*)

On May 4, 2024, Defendant Cook and several officers came to Plaintiff's unit and "handc[u]ffed [Plaintiff] for a second Major Misconduct Ticket" based upon events that occurred on April 23, 2024. (*Id.*) The ticket was written by orders of Defendant Cassel and charged Plaintiff with possession of dangerous contraband on the basis that Plaintiff had his legal writer flash drive

2

on his person "while not on [his] assignment." (*Id.*) Plaintiff avers that he explained to Defendant Cassel that "it was not unusual for a Legal Writer to have mistakenly forgot[ten] to turn their Flash-drive [in to] the librarian before leaving their assignment." (*Id.*) The flash drive had been discovered on Plaintiff's person when he was scanned by the full-body scanner in the school building, and the flash drive was given to Defendant Cassel. (*Id.*)

Defendant Cassel took Plaintiff and the flash drive to speak to Defendant Zupont. (*Id.*, PageID.5.) Plaintiff told Defendant Zupont that he had the flash drive on his person and that Defendant Novak had said "that if this happens [to] just bring it back to the library when you come back to[] work." (*Id.*) Defendant Zupont told Defendant Cassel that he "would have to address that question with Defendant Novak and that this flash-drive [did not] look like one belonging to the Legal Writer's Program." (*Id.*)

Plaintiff alleges that Defendant Cassel then returned to his office and unsuccessfully tried to open the flash drive to review its contents. (*Id.*) Defendant Cassell returned to the school building, unlocked the law library, and called Plaintiff and Defendant Zupont into the library. (*Id.*) Defendant Cassel asked Plaintiff for the access code to the flash drive. (*Id.*) Before Plaintiff could respond, Defendant Zupont gave Defendant Cassel the access code. (*Id.*) Plaintiff contends that by giving the access code to Defendant Cassel, Defendant Zupont confirmed that the flash drive was a legal writer's flash drive "after he lied about it not being one because the only ones who can install [the access] code onto a flash drive are the Librarians." (*Id.*, PageID.5–6.)

Plaintiff avers that the misconduct ticket regarding the flash drive was not written in a timely manner because it was not written and served within 24 hours of the incident. (*Id.*, PageID.6.) Plaintiff contends that he was not given any reasonable cause for this delay, and that "[a]ny reasonable delays in writing a misconduct ticket should be specified in the misconduct

3

report per [p]olicy." (*Id.*) Plaintiff's exhibits indicate that on May 10, 2024, Hearing Officer Morris found Plaintiff not guilty after conducting a misconduct hearing. (ECF No. 1-6, PageID.36.)

Plaintiff goes on to allege that on October 24, 2024, he was working his assignment in the kitchen when Defendant Kelly and other officers came into the kitchen, handcuffed Plaintiff and another inmate, and placed Plaintiff and the other inmate in segregation. (Compl., ECF No. 1, PageID.6.) Plaintiff remained in segregation for a day and a half. (*Id.*) Plaintiff avers that Defendant Kelly was acting on orders given by Defendant Salinas. (*Id.*, PageID.6–7.) Plaintiff alleges that during his time in segregation, his property was placed in the counselor's office at Defendant Salinas' direction. (*Id.*, PageID.7.) Plaintiff was released from segregation on October 25, 2024. (*Id.*) When he received his property, Plaintiff discovered that his television, radio, and typewriter were broken. (*Id.*) Plaintiff also discovered that both major misconduct tickets he had previously received had been removed from his property. (*Id.*) Plaintiff contends that was done "in an attempt to block [Plaintiff] from filing" the instant lawsuit. (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert First Amendment retaliation and access to the courts claims, as well as Fourteenth Amendment due process claims premised upon Plaintiff's receipt of the misconduct tickets, placement in segregation, and deprivation of property. Plaintiff seeks compensatory and punitive damages, to be reinstated to his legal writer position, and to receive $1,600.00 in back pay for every day he missed as a legal writer. (*Id.*, PageID.10–11.)

## II.    Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel to represent him in this matter. (ECF No. 3.) Plaintiff contends that this is "a complex case that contains several legal claims," and that each claim involves a "different set of Defendants." (*Id.*, PageID.50.)

4

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel (ECF No. 3).

### III.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **First Amendment Claims**

        **1.**    **Retaliation Claims**

The Court has construed Plaintiff's complaint to assert First Amendment retaliation claims. Plaintiff suggests that officers at ICF retaliated against him "by placing him in segregation to search his property [and remove the] misconduct tickets, and altering them in an attempt to block his ability to seek redress." (Compl., ECF No. 1, PageID.10.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

6

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff merely alleges the ultimate fact of retaliation. As an initial matter, Plaintiff's complaint is wholly devoid of any *facts* from which the Court could infer that any of the named Defendants were personally responsible for removing the two misconduct tickets from Plaintiff's property. Furthermore, Plaintiff's complaint is devoid of any *facts* suggesting that the misconduct tickets were removed from his property because Plaintiff had been engaged in any protected conduct. While Plaintiff suggests that the tickets were removed in an attempt to block him from filing the instant lawsuit, nowhere in his complaint does Plaintiff set forth any facts suggesting that he had voiced his intent to file this lawsuit shortly before the tickets were removed from his property. Plaintiff instead appears to ask this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in

the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that any of the named Defendants acted with retaliatory intent. *See Iqbal*, 556 U.S. at 679. Because Plaintiff has not met that initial burden, the Court will dismiss his First Amendment retaliation claims.[1]

### 2.     Access to the Courts Claims

Given Plaintiff's suggestion that staff at ICF removed the misconduct tickets from his property in an attempt to hinder Plaintiff's ability to seek redress by filing this lawsuit, the Court has generously construed Plaintiff's complaint to assert First Amendment access to the courts claims.

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

---

[1] If Plaintiff intended to raise any other retaliation claims, for the same reasons set forth herein, these claims would be subject to dismissal for failure to state a claim because such claims would be entirely conclusory.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

While the instant lawsuit is a civil rights claim encompassed by *Lewis*, Plaintiff simply fails to identify and describe any lost remedy. Nor can he—Plaintiff was clearly able to file the instant lawsuit regarding his receipt of the two misconduct tickets, and he has included copies of those misconduct tickets with his exhibits to his complaint. Accordingly, the Court will dismiss any intended First Amendment access to the courts claims asserted by Plaintiff.

### B.    Fourteenth Amendment Due Process Claims

#### 1.    Misconduct Proceedings and Placement in Segregation

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon his receipt of the two misconduct tickets described above, as well as his short placements in segregation pending proceedings on the first ticket, as well as on October 24, 2024.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As set forth above, Hearing Officer Morris dismissed the first misconduct ticket and found Plaintiff not guilty of the second ticket. The Court notes that there is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th

10

Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed").

Moreover, Plaintiff's short stays in segregation do not amount to a "significant and atypical deprivation." With respect to the first misconduct ticket, Plaintiff was placed in segregation on April 23, 2024, and was released on May 3, 2024. (Compl., ECF No. 1, PageID.3–4.) Plaintiff does not indicate whether he was placed in segregation pending proceedings on the second misconduct ticket. Finally, Plaintiff avers that he was again placed in segregation on October 24, 2024, and was released 36 hours later, on October 25, 2024. (*Id.*, PageID.6–7.) However, confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

MDOC Policy Directive 04.05.120 identifies three types of segregation used by the MDOC: temporary segregation, administrative segregation, and punitive segregation. *See* MDOC Policy Directive 04.05.120, ¶¶ M–Z (eff. June 1, 2019). Temporary segregation "is used when it is necessary to move a prisoner from general population (e.g., pending a hearing for a Class I misconduct violation, classification to administrative segregation, pending an investigation,

11

transfer, etc.)." *See id.* ¶ M. Punitive segregation, on the other hand, is used "only [for an inmate] to serve a detention sanction for a Class I misconduct as ordered by an ALJ." *Id.* ¶ Z.

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *See Sandin*, 515 U.S. at 484. A stay in segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794. The United States Court of Appeals for the Sixth Circuit has concluded that a stay longer than 30 days in segregation is not necessarily considered an atypical or significant hardship, *see Joseph*, 410 F. App'x at 868; *see also, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812–23 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

In light of the foregoing, considering that placement in disciplinary and administrative segregation for relatively short periods of time do not qualify as atypical or significant, certainly Plaintiff's stays of 10 days and 36 hours in temporary segregation cannot rise to the level of

atypical or significant as contemplated by *Sandin*. *See McGowan v. Morse*, No. 1:17-cv-184, 2017 WL 1017823, at *7 (W.D. Mich. Mar. 16, 2017) (concluding same regarding five-day stay in temporary segregation). Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment due process claims related to his misconduct proceedings and placements in segregation are properly dismissed for failure to state a claim.

### 2. Deprivation of Property

The Court has also construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon the deprivation of his property—namely, his television, radio, typewriter, and copies of misconduct tickets.

Such claims, however, are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of

property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, any Fourteenth Amendment procedural due process claims premised upon the deprivation of Plaintiff's property will be dismissed.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

An order and judgment consistent with this opinion will be entered.

Dated:   October 31, 2025              /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge